Eastern District of Kentucky
FILED
FEB 21 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-181-GWU

HANK PAUL,                      PLAINTIFF,

VS.           **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Paul

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Paul

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Paul

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Hank Paul, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic obstructive pulmonary disease and sleep apnea. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Paul retained the residual functional capacity to perform significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 44 years, educational background, and past work experience could perform any jobs if he had no exertional limitations, but needed to avoid repetitive bending, stooping, and crawling, to avoid even moderate exposure to temperature and humidity extremes, fumes, odors, dust, gases, and poor ventilation, and would be limited to understanding and carrying out simple tasks in object focused settings involving no greater than moderate stress and pressures. (Tr. 336-7). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 338).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

A considerable part of the plaintiff's treatment was for breathing problems. He alleged breathing problems as one of his grounds for disability (Tr. 78), and the state agency employee who helped him fill out his Disability Report noted that "he coughed and wheezed continuously during the interview," as well as using and inhaler three to four times, and on two occasions "had to get a drink of water because he was choking so badly." (Tr. 76). Mr. Paul testified that he used breathing pills, inhalers, and a nebulizer, got dizzy standing up, and could not go outside except in cool weather. (Tr. 317-18). At night he had to use a CPAP machine and oxygen due to sleep apnea. (Tr. 338). He still smoked half a pack of cigarettes per day, however. (Tr. 317).

Mr. Paul's treating family physicians referred him to Dr. Abdi Vaezy, a board certified pulmonologist, in March, 2003. (Tr. 178). At that point, Mr. Paul stated that he had smoked up to 3 1/2 packs of cigarettes a day for 20 years, but had quit three months previously. (Tr. 179). A pulmonary function test showed an FEV1 only 33 percent of the expected amount, representing a severe obstructive impairment. (Tr. 183). Dr. Vaezy prescribed several breathing medications. (Tr. 179). On March 18, 2003, he retested the plaintiff, and obtained an FEV1 only 29 percent of the predicted level, once again listed as a severe obstructive impairment. (Tr. 182). Dr.

8

Paul

Vaezy indicated that the plaintiff might be a candidate for a lung transplant. (Tr. 177). On April 29, 2003, Mr. Paul reported that he was not much better and was occasionally coughing up bloody sputum. (Tr. 176). His FEV1 improved to the 45 percent level, described by the physician as a moderate obstructive impairment. (Tr. 180). However, Dr. Vaezy recommended a consultation with a physician in Louisville for a lung transplant. (Tr. 176). Finally, on September 17, 2003, Dr. Vaezy wrote a letter opining that the plaintiff had severe COPD and was considered totally and permanently disabled. (Tr. 174).

While the ALJ briefly mentioned Dr. Vaezy's treatment of the plaintiff in his decision, he did not mention or discuss the physician's opinion regarding disability. (Tr. 16). The Sixth Circuit has recently held that the Commissioner is required to follow her own regulations in giving good reasons for not giving weight to a treating physician's opinion. <u>Wilson v. Commissioner of Social Security</u>, 348 F. 3rd 541, 544-5 (6th Cir. 2004). This is all the more obviously important in the present case since another treating source, Dr. J. Wesley McConnell, who was treating the plaintiff for obstructive sleep apnea on referral from Dr. Vaezy, indicated in his office notes that he would sign a statement for the plaintiff stating that he was unable to work at the present time. (Tr. 247).[1] Dr. McConnell's sleep study showed oxygen desaturation to 84 percent. (Tr. 247). He also diagnosed severe COPD along with severe sleep

---

[1] The actual disability statement referred to is not in the Court transcript.

9

Paul

apnea. Moreover, the Commissioner's consultative examiner, Dr. Jeffrey Ellington, had also obtained a pulmonary function test in March, 2003 which was interpreted as showing severe obstructive disease with a possible restrictive component and only mild improvement with bronchodilation. (Tr. 136). Dr. Ellington had concluded that the plaintiff would be severely restricted in his ability to lift, carry, stand, walk, climb, and work around chemicals, dust, fumes, and humidity. (Id.).

Therefore, a remand will be required in order to consider the effect of these disability statements by the treating sources.

The Court also notes the plaintiff's argument on appeal that uncontradicted achievement testing showed only a third-grade reading level and a fourth-grade arithmetic level (Tr. 264), which would be considerably less than the ninth grade education which the VE was asked to assume in the hypothetical question. (Tr. 315, 336-7). The Commissioner argues that the jobs of hand packer and small parts assembler identified by the VE (Tr. 338), would not be precluded by these levels of reading and arithmetic, but the issue can be addressed to the VE on remand.

The decision will be remanded for further consideration.

This the  21  day of February, 2006.

G. WIX UNTHANK,
Senior Judge

10